UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LAWRENCE PEPE CARDOZA,<br><br>     Plaintiff,<br><br>vs.<br><br>M. TANN, *et al.*,<br><br>     Defendants. | Case No. 1:11-cv-01386-RRB<br><br>**ORDER RE: MOTIONS FOR<br>SUMMARY JUDGMENT<br>[DOCKETS 108, 109]** |

I.    **PENDING MOTIONS**

At **Docket 108** Defendants P. Paz, F. Carreon, and R. Pinkham have moved for summary judgment.  Plaintiff has opposed the motion,[1] and Defendants have replied.[2]

At **Docket 109** Defendants T. Byers, M. Codd, R. Cummings, R. Hopkins, T. Mackey, S. Martinez, and J. Oldan have moved for summary judgment.  Plaintiff has opposed the motion,[3] and Defendants have replied.[4]

Subsequently the Court directed Defendants to serve and file certified copies of the CDCR 602 file in SATF-10-2528.[5]  Defendants have complied with that Order.[6]

---

[1]  Docket 120.

[2]  Docket 122.

[3]  Docket 119.

[4]  Docket 121.

[5]  Docket 130.

[6]  Docket 134.

ORDER RE:  MOTIONS FOR SUMMARY JUDGMENT [DOCKETS 108, 109]
*Cardoza v. Tann*, 1:11-cv-01386-RRB – 1

The Court has determined that oral argument would not materially assist the Court in resolving the issues presented by the pending motions.  Therefore, all requests for oral argument are **DENIED**.  Accordingly, the matters are submitted for decision on the moving and opposing papers.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[7]  Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[8]   In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact for trial.[9]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.   In order to show that a genuine issue of material fact exists a nonmoving plaintiff must introduce probative evidence that establishes the elements of the

---

[7]  Fed. R. Civ. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[8]  Fed. R. Civ. P. 56(e).

[9]  *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002).

complaint.[10]  Material facts are those that may affect the outcome of the case.[11]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[12]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[13]  The evidence of the non-moving party is to be believed and all justifiable inferences are drawn in his favor.[14]  The moving party has the burden of showing there is no genuine issue of material fact; therefore, he or she bears the burden of both production and persuasion.[15]  The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case.[16]  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[17]

---

[10]  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–49 (1986).

[11]  *Id*.

[12]  *Id*.

[13]  *Id*. at 255.

[14]  *Id*.

[15]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

[16]  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010); *see Celotex*, 477 U.S. at 325.

[17]  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses.[18]   Instead, it generally accepts as true statements made under oath.[19] However, this rule does not apply to conclusory statements unsupported by underlying facts,[20] nor may the court draw unreasonable inferences from the evidence.[21] "To survive summary judgment, a plaintiff must set forth non-speculative facts, not sweeping conclusory statements."[22]

## III.   BACKGROUND

This case is before the Court on the unverified Second Amended Complaint filed on his behalf by counsel, in which Cardoza asserted eight claims for relief.[23] Cardoza's claims arise out of a cell extraction and subsequent placement in a holding cell.  It is undisputed that Cardoza, a partially paralyzed inmate confined to a wheelchair, was a participant in a protest in which several inmates covered their cells with paper.  Although ordered to do remove the paper, Cardoza refused.  The paper was removed, Cardoza was

_____

[18] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[19] *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005); *see Williams v. Calderon,* 48 F.Supp.2d 979, 989 (C.D. Cal. 1998) (noting in the context of a habeas claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom. Williams v. Woodford,* 384 F.3d 567 (9th Cir. 2004).

[20] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

[21] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *McLaughlin v. Liu*, 849 F.2d 1205, 1207–1209 (9th Cir. 1988).

[22] *Calfasso, U.S. ex rel. v. Gen Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1061 (9th Cir. 2011).

[23] Docket 36.

sprayed with pepper spray, peaceably removed from his cell, taken to a decontamination area where he was stripped of his clothing and at least partially decontaminated, then placed in an outdoor holding area.[24]

First Claim For Relief.  An excessive use of force claim against Defendants Allison, Sherman, Tann, Lieutenants, Sergeants, Correctional Officers, and Wycoff.[25]

Second Claim for Relief.  A claim of inadequate medical and mental health treatment against Defendants Allison, Sherman, Sherman, Tann, Lieutenants, Sergeants, Correctional Officers, Byers, Wyckoff, and Cortez.

Third Claim for Relief.  A failure to protect from harm against Defendants Allison, Sherman, Sherman, Tann, Lieutenants, Sergeants,  Correctional Officers, Byers, Wyckoff, and Cortez.

Fourth Claim for Relief.  A violation of due process claim against Defendants Mendez, Claytor, Tann and Allison.

Fifth Claim for Relief.  Alleges that Defendants Allison, Sherman, Sherman, Tann, Lieutenants, Sergeants, Correctional Officers, Byers, Wyckoff, and Cortez denied him equal protection of the laws.

---

[24]  The approximate length of time Cardoza was in the holding area varies from approximately 2½ hours (Defendants) to 5½ hours (Cardoza).

[25]  Defendants L. Marquez and O. James are collectively identified in the Second Amended Complaint as "Defendant Lieutenants."  Defendants D. Plunkett and M. Jones are collectively identified as "Defendant Sergeants."  Defendants P. Paz, R. Pinkham, F. Carreon, R. Cummings, M. Codd, J. Oldan, R. Hopkins, T. Mackey, and S. Martinez are collectively identified as "Correctional Officers."

Sixth Claim for Relief.  Alleges that  Defendants Allison, Sherman, Sherman, Tann, Lieutenants, Sergeants,  Correctional Officers, Byers, Wyckoff, and Cortez violated the Ku Klux Klan Act (42 U.S.C. § 1985(3)).

Seventh Claim for Relief.  A discrimination on the basis of a disability in violation of the Americans with Disabilities Act (42 U.S.C. §§ 12101, *et seq.*) claim against all Defendants.

Eighth Claim for Relief.   A common-law assault and battery claim against Defendants Tann, Lieutenants, Sergeants,  Correctional Officers, Byers, Wyckoff, and Cortez.

In screening the Second Amended Complaint the Court dismissed the claims as against Defendants K. Allison, S. Sherman, J. Claytor, and J. Mendez in their entirety.  The Court also dismissed the Fourth and Sixth Claims for Relief against all Defendants.  The Court further ordered Defendants Tann, Correctional Lieutenants, Correctional Sergeants, and Correctional Officers to answer the First, Third, Fifth, Seventh, and Eighth Claims for Relief.  Defendant Cortez was ordered to answer the Second Claim for relief, and Defendants Byers and Wykoff ordered to answer the Third and Eighth Claims for relief.[26] Defendants answered.[27]

---

[26]  Docket 45.

[27]  Dockets 55 (Codd, Cummings, Hopkins, James, Marquez, Martinez, and Oldan), 56 (Carreon, Jones, Paz, Pinkham, and Plunkett), 57 (Tann), and 61 (Cortez).

Subsequently, Defendants M. Cortez, D. James, M. Jones, L. Marquez, D. Plunkett, M. Tann, and A. Wykoff were voluntarily dismissed with leave of Court.[28]  In his opposition to the pending motions Cardoza abandoned his Fifth Claim for Relief (equal protection).

Still pending before the Court are the First (excessive force), Third (failure to protect), Seventh (ADA), and Eighth (common law assault and battery) Claims for Relief against Defendants P. Paz, F. Carreon, R. Pinkham T. Byers, M. Codd, R. Cummings, R. Hopkins, T. Mackey, S. Martinez, and J. Oldan.

## IV.    ISSUES PRESENTED

Defendants Paz, Carreon, and Pinkham contend that as a matter of law Cardoza cannot establish that:  (1) no specific action or omission can be attributed to either Carreon or Pinkham; (2) the misconduct attributable to Paz does not rise to the level of a constitutional violation; (3) the use of pepper spray did not constitute the use of excessive force; (4) Cardoza's failure to protect claim does not rise to the level of a constitutional violation; and (5) each of them are entitled to qualified immunity with respect to the First and Third Claims for Relief.

Defendants Byers, Codd, Cummings, Hopkins, Mackey, Martinez, and Oldham contend that Cardoza cannot as a matter of law establish that they, or any of them:  (1) utilized excessive force; or (2) failed to intervene.  Defendants further contend that they are entitled to qualified immunity and Cardoza has failed to properly exhaust his administrative remedies.

---

[28]  Docket 91.

In his opposing the motions Cardoza contends that there are three material issues of fact in dispute: (1) adequacy of the decontamination after being sprayed with pepper spray; (2) forced to defecate upon himself because Defendants did not provide him with his cane thereby precluding his use of the bathroom facilities; and (3) left in a degrading dehumanizing position (naked in a holding cage with another man and forced to sit in his own excrement) for a period of approximately five hours.[29]

Initially, the Court notes that the Declarations filed by Cardoza do not contain the certification required by Local Rule 131(f).  Defendants Paz, Carreion, and Pinkham have not timely disputed the authenticity of the declarations as required by Local Rule 131(g). Accordingly, with respect to Paz, Carreon, and Pinkham, the Court will give the Declarations filed by and on behalf of Cardoza such weight as they may otherwise be entitled.

On the other hand, Defendants Byers, Codd, Cummings, Hopkins, Mackey, Martinez, and Oldham have objected.  Accordingly, as against those Defendants, the Declaration filed in opposition is hereby **STRICKEN** and will be disregarded.

---

[29]  By so limiting the issues the Court assumes that Cardoza has abandoned all other claims as against these Defendants.  Specifically, that he has abandoned his Third (Failure to Protect), Seventh (ADA) and Eighth (Assault and Battery) Causes of Action

## V.   EXHAUSTION – BYERS, CODD, CUMMINGS, HOPKINS, MACKEY, MARTINEZ, AND OLDHAM

Exhaustion of administrative remedies prior to bringing suit is required irrespective of the relief sought by the prisoner and regardless of the relief provided by the process.[30] Although not jurisdictional, exhaustion is nonetheless mandatory, and there is no discretion to excuse it.[31]  "Proper exhaustion" means "complet[ing] the administrative review process in accordance with the applicable rules."[32]  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[33]  Although all available remedies must be exhausted, "those remedies need not meet federal standards, nor need they be plain, speedy and effective."[34]  "For prisons, . . ., that do not instruct prisoners on what precise facts must be alleged in a grievance, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."[35]

---

[30]  42 U.S.C. § 1997e(a) (mandating that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 742 (2001).

[31]  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

[32]  *Jones v. Bock,* 549 U.S. 199, 218 (2007).

[33]  *Id.*

[34]  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (quoting *Booth*, 532 U.S. at 739) (internal quotation marks omitted)).

[35]  *Akhtar v. Mesa*, 698 F.3d 1202, 1211 (9th Cir. 2012) (internal citations and quotation marks omitted).

ORDER RE:  MOTIONS FOR SUMMARY JUDGMENT [DOCKETS 108, 109]
*Cardoza v. Tann*, 1:11-cv-01386-RRB – 9

"Exhaustion should be decided, if feasible, early in the proceedings before reaching the merits of a prisoner's claim."[36]  This will usually be by a motion for summary judgment.[37] A defendant has the initial burden to prove "that a grievance procedure existed, and the prisoner did not exhaust that available remedy."[38]  Once a defendant has met this burden, the burden shifts to the plaintiff to demonstrate that the grievance procedure was inadequate, ineffective, unobtainable, unduly prolonged, inadequate, or futile.[39]  If a court finds that a plaintiff has failed to exhaust, "the proper remedy is dismissal of the claim without prejudice."[40]

Although it names several correctional officers CDCR 602 SATF-10-2528,[41] which relates to the incident underlying the Complaint, only identifies by name one of the Defendants in this case:  Correctional Officer P. Paz.  It does, however, also refer to unidentified correctional officers and lieutenants as part of an extraction team.  In his Second Amended Complaint Cardoza identifies Defendants P. Paz, F. Carreon, R.

---

[36] *Albino v. Baca*, 747 F3d 1162, 1170 (9th Cir. 2014) (en banc).  The Ninth Circuit also noted that "if discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving to later—if it becomes necessary—discovery directed to the merits of the suit."  *Id.*

[37] *Id.* at 1166, 1168–69 (overruling in part *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)).

[38] *Id.* at 1172.

[39] *Id.*

[40] *Wyatt*, 315 F.3d at 1120 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.3d 365, 368 & n.3 (9th Cir. 1988) (*per curiam*)).

[41] Docket 134-1.

Pinkham, M. Codd, R. Cummings, R. Hopkins, T. Mackey, S. Martinez, and J. Oldan as members of the extraction team.

Initially the Court notes that nothing in CDCR 602 SATF-10-2528 refers to or identifies Physicians Assistant Byers by either name or position.  It is therefore clear that Cardoza has not exhausted his administrative remedies as to Byers.  Consequently, as to Byers the Second Amended Complaint must be dismissed.

As to Defendants Codd, Cummings, Hopkins, Mackey, Martinez, and Oldan the situation differs.  In ruling on the pending motions the Court assumes without deciding that, by including the correctional officers composing the extraction team without specifically identifying those officers by name, adequately identifies them for the purposes of the exhaustion requirement.  That does not end the Court's inquiry.  Exhaustion requires that the inmate must still establish that he properly pursued his remedies through all levels of review.

The documents filed in connection with the pending motions reveals the following sequence of events with respect to SATF-10-02528.

June 22, 2010 – Inmate/Parolee Appeal Form CDC 602 submitted.  As relevant to the Complaint before the Court Cardoza claimed:

> Subsequently due to the cell extraction I and all inmates were removed from our cells subjected to further mental, emotional, physical abuse when c/os and LTs, and AW Tann command [*sic*] all I/Ms be stripped down naked paraded from our cells and kept in handcuffs gave only seconds (5 to 10) of decontamination[.]  Put side by side (needly [*sic*] exposed) to each other and left that way outside in the cold from 4:00 pm to 9:00 pm at night.  Hot during the day sand blowing on us at night.  It was cold not even any food.  And not allowed to make a bowel movement.  I was in a wheel-chair in handcuffs.  And not waist chains which are mandated by the OP.  I

complained to the Lpt Cortez.  To Sgt. Jones and Sgt Jones relayed AW Tann directed us to be stripped and put under those constraints.

I was placed on management status before I was even evaluated for my pysch issue.  I am being punished when I was not even in my right mind and was admitted to CDC crisis bed.

I was in pain for 5 hours and cold and I wasnt [*sic*] never checked on for my cuffs being to tight.  My cane was never given to me so that I can get up and from the toiletries.  No toilet paper was given when asking.  This was plan cruel and unusal [*sic*] punishment.  Corporal punishment, deliberate indifference to my mental health and physical well being.

I am simply asking why were females sent to view and make comments to our naked bodies?  and [*sic*] why were we dehumanized like we were slaves.[42]

July 15, 2010 – Partially granted at the second level and referred to the Office of Internal Affairs for further investigation as a staff complaint.[43]

November 4, 2010 – "Rejected Missing Documentation"[44]

January 13, 2011 – Correspondence from Cardoza inquiring about the status of a staff complaint sent to the Third Level in "early November" to which he had not yet received a reply.[45]

March 18, 2011 – A Memorandum from the Inmate Appeals Branch informing Cardoza that a staff complaint filed at SATF was rejected on November 4, 2010, and returned for inclusion of the Rights and Responsibilities Statement (CDC 1858) and that there was no indication he had resubmitted the appeal for the Director's Level of Review.[46]

---

[42]  Docket 134-1, pp. 7–8.

[43]  Docket 134-1, pp. 7–8.

[44]  Declaration of Plaintiff, Exhibit A-1, Docket 126, p. 5.

[45]  *Id.*, p. 3.  The document contains a date stamp indicating receipt by the Inmate Appeals Branch on January 19, 2011.

[46]  *Id.*, p. 4.

March 18, 2011 – Notice from Inmate Appeals Branch that the Third Level Appeal had been rejected because it did not include the required CDCR Form 1858, Rights and Responsibilities Statement.[47]

April 3, 2011 – Inmate/Parolee Request for Interview, Item or Service (CDCR 22) in which Cardoza, referring to Appeal No. SATF-10-02528, states that he sent a 602 to the Third Level, but that the Third Level wrote him back that they did not receive his mail.[48]

May 16, 2011 – Inmate/Parolee Appeal (CDCR 602) in which Cardoza indicates that he sent a 602 to the Third Level on November 11, 2010, that was lost.[49]

July 11, 2012 – Notification by Internal Affairs Investigation advising Cardoza that the office of internal affairs had completed its investigation and "determined that there was a CDCR policy violation and the appropriate action taken."[50]

The evidence submitted in this case is equivocal on the issue of exhaustion. The CDCR 602 was rejected at the Director's Level for a procedural defect on November 4, 2011. On the other hand the evidence also indicates that it may have been resubmitted on November 11 and lost. Because the burden of proof on the issue of exhaustion is on the Defendants, based upon the record before it the Court cannot find that Cardoza is not excused from exhausting his administrative remedies due to reasons beyond his control. Accordingly, to the extent that the motion of Defendants M. Codd, R. Cummings, R.

---

[47] *Id.*, p. 6.

[48] Declaration of Plaintiff, Exhibit A-2, Docket 127, p. 2.

[49] *Id.*, p. 3.

[50] Docket 134-1, p. 9.

Hopkins, T. Mackey, S. Martinez, and J. Oldan is based upon the failure to exhaust administrative remedies it will be denied.

## VI.   MERITS

### A. *Paz, Carreon, Pinkham*

Cardoza continues to assert three contested issues.   (1) inadequate decontamination after being sprayed with pepper spray; (2) because he was denied the use of his cane he was precluded from using the bathroom facilities and forced to defecate upon himself; and (3) left in a degrading dehumanizing position (naked in a holding cage and forced to sit in his own excrement) for a period of approximately five hours.

With respect to those issues, the Statements of Undisputed and Disputed Statements of Fact reveal the following factual dispute.

Defendants' Statement:

> 8.  After dousing Cardoza with water from an outside shower, Paz and the other officer placed Cardoza and his cellmate, still naked, in an outside holding cell.[51]

Plaintiff's Response:

> 9.  That the time that the defendants took to wash the chemical agent off of me was only for a few seconds and not long enough to ease the burning in my eyes and my face as a result of being exposed to the chemical agent.
> 10.  That the defendants never removed me from my wheel chair so that I could wash the chemical agent off of my body.[52]

---

[51]  Carreon, Paz, and Pinkham Statement of Undisputed Facts.  Docket 108-2, p. 2.

[52]  Plaintiff's Response to Defendants Paz, Carreon, Pinkham Motion for Summary Jugdment.  Docket 120-1, p. 2.  Declaration of Lawrence Cardoza in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  Docket 120-2, p.2.

Defendants' Statement:

12.  Following extraction, Cardoza neither directly asserted to Paz, Pinkham or Carreon he was in respiratory distress, nor so behaved.[53]

Plaintiff's Response:

7.  That as a result of being pepper sprayed, I immediately experienced severe difficulty breathing, feelings of suffocation, burning sensation over my eyes, face, skin and body, and pain in my chest.[54]

Defendants' Statement:

14.  Following extraction, Cardoza did not assert to Paz, Pinkham, or Carreon that he could not use the holding cell's toilet or needed assistance in that regard his cellmate would not provide.[55]

Plaintiff's Response:

15.  That I was confined inside the holding cage naked with another naked inmate and forced to sit in my own excrement due to my inability to go to the bathroom from approximately 2:00 p.m. to approximately 7:20 p.m. when I was finally removed from the holding cage for medical treatment.[56]

The United States Supreme Court has outlined a two-part test to determine if prison

officials have violated a prisoner's rights under the Eighth Amendment:

[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, sufficiently serious[;] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities . . ..  The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.  To violate the Cruel and

---

[53]  Docket 108-2, p. 2.

[54]  Dockets 120-1, p 2; 120-2, p. 2.

[55]  Docket 108-2, p. 3.

[56]  Dockets 120-1, p. 2; 120-2, p. 3.

Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.[57]

Initially, the Court notes that Cardoza's opposing statements of fact are for the most part vague, ambiguous generalizations that fail to specifically address the fact asserted. Measured against the applicable standard for a deliberate indifference claim, they fall far short.

With regard to the first requirement, "[t]he circumstances, nature, and duration of a deprivation of [shelter, food, clothing, sanitation, medical care, and personal safety] must be considered."[58] "The more basic the need, the shorter the time it can be withheld."[59] Deprivation of basic necessities for even brief periods can constitute a violation whereas more moderate deprivations must be more lengthy or ongoing.[60]

As to the second requirement, the relevant state of mind is "one of 'deliberate indifference' to inmate health or safety."[61] To show deliberate indifference, the inmate must prove that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

---

[57] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 299–300 (1991) (discussing subjective requirement); *Johnson v. Lewis*, 217 F.3d 726, 731  (9th Cir. 2000) (discussing two-part test); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996) (same); *Wallis v. Baldwin*, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (same); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (same).

[58] *Johnson*, 217 F.3d at 731.

[59] *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982).

[60] *Johnson*, 217 F.3d at 731–32.

[61] *Farmer*, 511 U.S. at 834.

substantial risk of serious harm exists, and he must also draw the inference."[62]   "Thus, *Farmer* [ ] requires an inmate to show that the official knew of the risk *and* that the official inferred that substantial harm might result from the risk."[63]   The "prison official need not have acted 'believing that harm actually would befall an inmate; it is enough that the official acted . . . despite his knowledge of a substantial risk of serious harm.' "[64]   The question of the official's knowledge is a question of fact.[65]

As to Defendants Carreon, Paz, and Pinkham, Cardoza has failed to raise a triable issue of fact.  Cardoza does not contradict the statements that he neither indicated to them that he was in distress from being sprayed with the pepper spray, nor is there any evidence that Cardoza requested that he be given additional decontamination or the use of his cane to facilitate use of the toilet.[66]  Consequently, Carreon, Paz, and Pinkham are entitled to judgment in their favor.

---

[62]   *Id*. at 837; *see Toguchi v.  Chung*, 391 F.3d 1051, 1057 (9th Cir.  2004) (discussing objective and subjective elements of deliberate indifference claim).

[63]   *Wallis*, 70 F.3d at 1077.

[64]   *Id*. (quoting *Farmer*, 511 U.S. at 842) (omission in original).

[65]   *Farmer*, 511 U.S. at 826.

[66]   The Court also considered the relevant operative allegations of the verified First Amended Complaint.  Docket 18, pp. 6–7, 18–21.  Those allegations, which are for the most part generalized and generic without specifying to whom he made the requests.  While sufficient to satisfy the requirements of notice pleading, they are insufficient to contradict the specific statements of these Defendants in the context of a motion for summary judgment.

### B.   *Codd, Cummings, Hopkins, Mackey, Martinez, and Oldan*

As to Defendants Codd, Cummings, Hopkins, Mackey, Martinez, and Oldan, a somewhat different picture is presented.  The only evidence presented to the Court by Cardoza is the verified First Amended Complaint ("FAC").

As relevant to the issues before the Court, in his FAC Cardoza alleges he was shackled naked in chains along with his cellmate without access to proper running toilet and drinking water facilities or food for approximately seven hours.[67]  Cardoza further alleges that the contamination was inadequate and, although he requested the officers present, including Codd, Hopkins, Cummings, Mackey, Martinez, and Oldan to decontaminate him, they refused as a result of which he was denied decontamination for over 12 hours.[68]  Cardoza further alleges that he was denied his cane, which precluded his use of the toilet facilities so he could urinate or defecate for a period of 7½ hours, as a result of which he was forced to defecate and urinate on himself.[69]

At his RVR hearing arising out of the incident, Cardoza submitted a written statement in which he stated:

> I do not remember everything about the incident.  My mind blank out a lot during the cell extraction.  C/O's were being very disrespectful calling us names and LPTs calling us niggers.  I have witnessed a lot of beatings in this building.  I have been called names and have been treated cruel in E-1.  I was not in my right mind.  I was suicidal that day during the whole incident.  I was so stressed, paranoid and very scared that day.  It was too much on me.  I was hearing voices during the incident.  I was handcuffed instead of

---

[67]  First Amended Complaint, Docket 18, pp. 6–7.

[68]  *Id.*, p. 19.

[69]  *Id.*, pp. 20-21.

being put in waist chains.  My cane was taken from me and I was paraded in front of hundreds of inmates naked, in front of females naked.  I have been having issues and have been embarrassed since then.  I was left on the exercising cages naked handcuffed and was forced to be around other naked inmates for 5 hours.  Couldn't take a bowel movement and I was suicidal.  I went to CTC.  I just remember the aftermath of the incident and a little before.  I wasn't in my right state of mind to be able to stop my actions.  C/O Paz told me that I was a lil (little) bitch and if I come out he was taking my TV.  When I told him I had exercise yard coming today, I got severely agitated and this started the whole process.[70]

Even if the Court were to consider Cardoza's discovery responses, they would not materially assist Cardoza.

Defendants' Statement:

23.  Cardoza (T-68095) was then escorted by officers while he sat in his wheelchair outside to the decontamination area where he was decontaminated from the OC spray through the shower available.  Cardoza (T-68095) was then placed in to a "walk alone" cell on the yard, just like every other inmate who was similarly extracted that day, for further medical evaluation.  After extraction all of the inmates had to be temporarily rehoused on that day so that their cells in the housing units could be completely decontaminated from the OC spray before returning.[71]

Plaintiff's Response:

10.  That the defendants never removed me from my wheel chair so that I could wash the chemical agent off of my body.[72]

Defendants' Statement:

---

[70] Kearns Declaration, Exh. 1, Docket 110-9, p. 10.

[71] Byers, Codd, Cummings, Hopkins, Mackey, Martinez, and Oldhan Statement of Undisputed Facts.  Docket 109-2, p. 7.

[72] Plaintiff's Response to Defendants Codd, Cummings, Hopkins, Mackey, Martinez, and Olday's Motion for Summary Judgment.  Docket 119-1, p. 2.  Declaration of Lawrence Cardoza in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment. Docket 119-2, p. 2.

ORDER RE:  MOTIONS FOR SUMMARY JUDGMENT [DOCKETS 108, 109]
*Cardoza v. Tann*, 1:11-cv-01386-RRB – 19

27.  The extraction of Cardoza from his cell occurred at approximately 1620 hours on June 9, 2010.  At approximately 1700 hours, all cell extractions were complete and all the inmates had been removed from their cells and placed into the outdoor exercise yard.[73]

Plaintiff's Response:

15.  That I was confined inside the holding cage naked with another naked inmate and forced to sit in my own excrement due to my inability to go to the bathroom from approximately 2:00 p.m. to approximately 7:20 p.m. when I was finally removed from the holding cage for medical treatment.[74]

With respect to Defendant Oldan, his unrefuted declaration is that his participation in the cell extraction was limited to videotaping the events.[75]  The unrefuted declarations of the other Defendants show that the extent of their participation was also limited.  Codd applied the handcuffs.[76]  Cummings applied the leg irons.[77]  Hopkins was the shield officer.[78]  Mackey applied the mechanical restraints and escorted Cardozo to the decontamination area.[79]  Martinez was the baton officer.[80]  Nothing in the pleadings and documents filed in this case even remotely suggests that any of these Defendants were involved in or had any responsibility for the events that occurred after the extraction was complete and Cardoza delivered to the holding area.

---

[73]  Docket 109-2, p. 8.

[74]  Dockets 119-1, p 2; 119-2, p. 3.

[75]  Oldan Declaration, Docket 110-7, p. 5.

[76]  Codd Declaration, Docket 110-2, p. 4.

[77]  Cummings Declaration, Docket 110-3, p. 4.

[78]  Hopkins Declaration, Docket 110-4, p. 4.

[79]  Mackey Declaration, Docket 110-5, p. 4.

[80]  Martinez Declaration, Docket 110-6, p. 4.

Viewing the facts in the light most favorable to Cardoza as it must, the Court finds on the record before it that there is no reasonable probability that a properly instructed jury could find in favor of Cardoza.[81] Consequently, Defendants are entitled to judgment in their favor as a matter of law.

## VII.   ORDER

The Motion of Defendants P. Paz, F. Carreon, and R. Pinkham for Summary Judgment at **Docket 108** is hereby **GRANTED**.

The Motion of Defendants T. Byers, M. Codd, R. Cummings, R. Hopkins, T. Mackey, S. Martinez, and J. Oldan for Summary Judgment at **Docket 109** is hereby **GRANTED**.

The Second Amended Complaint on file herein is hereby **DISMISSED** in its entirety, Plaintiff to take nothing therefrom, and judgment entered thereon in favor of Defendants.

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of Cardoza's constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, the appeal is frivolous or taken in bad faith.[82] Accordingly, Cardoza's *in forma pauperis* status is hereby **REVOKED**.

---

[81]   The Court further notes but does not rely on the fact that Cardoza does not explain why his cell mate was unable to assist him between his wheelchair and the toilet. Furthermore, Cardoza does not explain the marked discrepancy between his statements in the administrative proceedings that he was unable to defecate and his allegations before the court that he was forced to defecate in his pants.

[82]   28 U.S.C. § 1915(a)(3);  *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of *in forma pauperis* status is appropriate if the appeal is frivolous).

The Clerk of the Court is directed to enter final judgment accordingly.

**IT IS SO ORDERED** this 3rd day of December, 2015

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE